# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2022 CA 1193-R

CHH

## ADVANCED BENEFIT CONCEPTS, INC.

## VERSUS

## BLUE CROSS AND BLUE SHIELD OF ALABAMA, ACCESS HEALTH, INC., & PREFERRED CARE SERVICES, INC.

Judgment Rendered: **FEB 27 2025**

* * * * *

On Appeal from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Suit No. C709719, Section 27

Honorable Trudy White, Judge Presiding

* * * * *

Timothy S. Babcock
Baton Rouge, LA

A. Edward Cangelosi, Jr.
New Orleans, LA

Attorneys for Plaintiff-Appellant,
Advanced Benefit Concepts, Inc.

Andree M. Cullens
Joseph E. Cullens, Jr.
Renee C. Crasto
S. Layne Lee
Baton Rouge, LA

Carl S. Burkhalter
Harold W. Bloom
Matthew J. Bowness
Birmingham, AL

Attorneys for Defendants-Appellees,
Blue Cross and Blue Shield of
Alabama, Access Health, Inc., &
Preferred Care Services, Inc.

* * * * *

BEFORE: THERIOT, HESTER, AND EDWARDS, JJ.

*Edwards, J. Concurring in part and dissenting in part with assigned reasons.*

**HESTER, J.**

This matter is before us on remand from the Supreme Court of Louisiana with instructions to consider the merits of the exception raising the objection of prescription filed by plaintiff-appellant, Advanced Benefit Concepts, Inc. ("ABC"), and the motion for summary judgment filed by defendants-appellees, Access Health, Inc., Preferred Care Services, Inc., and Blue Cross and Blue Shield of Alabama (collectively, "Access Health").[1]

## FACTS AND PROCEDURAL HISTORY

The pertinent facts and procedural history in **Advanced Benefit Concepts, Inc. v. Blue Cross & Blue Shield of Alabama**, 2023-01291 (La. 9/6/24), 392 So.3d 308, 310-13, reh'g denied, 2023-01291 (La. 10/24/24), 395 So.3d 255 (hereinafter, referred to as "**ABC II**"), is applicable and provides as follows:

> ABC entered into an agreement with Access Health. ABC helped Access Health identify, establish, and enter into relationships with employer groups, which Access Health could contract with to provide healthcare benefits.[3] Among the groups identified by ABC was the State of Louisiana's Office of Group Benefits ("OGB"). The contract between Access Health and OGB provided that Access Health would provide a primary healthcare network and services to OGB plan participants. The agreement between ABC and Access Health provided for Access Health to pay ABC a fee of $1.25 per month for each employee covered under the OGB contract.[4]
>
> [3] The agreement provided in part: "Whereas, ABC has and may continue to provide efforts and expend resources for the purpose of assisting [Access Health] in identifying and establishing business relationships with various [Employer groups]."
>
> [4] The term of the OGB contract was from July 1, 2019 to June 30, 2022, with two one-year options to extend the term to June 30, 2024.
>
> In December of 2020, OGB sent Access Health a demand letter claiming Access Health owed it money for failure to meet the return on investment benchmarks mandated in the OGB contract. In February of 2021, OGB began withholding payments to Access Health. Later that

---

[1] Access Health, Blue Cross and Blue Shield of Alabama, and Preferred Care Services, Inc. operated as a single business enterprise. **Advanced Benefit Concepts, Inc. v. Blue Cross & Blue Shield of Alabama**, 2023-01291 (La. 9/6/24), 392 So.3d 308, 310, n.2, reh'g denied, 2023-01291 (La. 10/24/24), 395 So.3d 255.

year, OGB and Access Health reached a settlement and amended the OGB contract.

Beginning in December of 2020, Access Health stopped paying ABC's monthly fee under the agreement. ABC claims it is owed $6,930,000. ABC filed a petition for damages asserting breach of contract against Access Health.

Access Health answered ABC's lawsuit with a general denial and asserted a reconventional demand followed by a supplemental and amended reconventional demand. Pertinent to this case, Access Health asserted as separate affirmative defenses in its answer that the agreement was "an absolute nullity and void *ab initio*" and that "the Fee Agreement is void." In the first supplemental and amended answer and reconventional demand, it asserted as separate affirmative defenses that the agreement was "an absolute nullity and void *ab initio*" and that "the Fee Agreement (and any alleged preexisting oral agreement) is void ... pursuant to [La. R.S.] 49:78.1."

In Count I of its reconventional demand, Access Health alleged "ABC represented [Access Health] as a lobbyist[,]" and "[d]uring its representation of [Access Health], ABC, through its principal, Charles Calvi, directly communicated with the chief executive officer of the OGB ... for the purpose of influencing the OGB to award the OGB Agreement to [Access Health]." Access Health asserted that OGB was an executive branch agency of the state, and, as such, ABC and Mr. Calvi were required to register as lobbyists in the State of Louisiana pursuant to La. R.S. 49:78.1. Access Health alleged that because neither ABC nor Mr. Calvi were registered as lobbyists with the State of Louisiana when they entered into the agreement, ABC and Mr. Calvi engaged in a misrepresentation that rendered the agreement void pursuant to La. R.S. 49:78.1. Access Health asserted that because the agreement was void, ABC was not entitled to any of the payments established by the agreement, and ABC was unjustly enriched. Access Health prayed for a judgment declaring the agreement void and awarding as damages payments that Access Health had tendered to ABC under the agreement.

In response to the reconventional demand, ABC filed a declinatory exception of lack of subject matter jurisdiction, arguing that the district court did not have jurisdiction over enforcement provisions of the Code of Ethics. Rather, the legislature had provided the enforcement provisions of the [Executive Branch Lobbying Act] to be within the exclusive purview of the Board [of Ethics], absent a challenge to the constitutionality of a provision of the Code of Ethics. As a result, the district court lacked subject matter jurisdiction to hear Access Health's reconventional demand claim, and the claim should be dismissed with prejudice. In the alternative, ABC argued that the time for the Board to take action to void the contract had prescribed. See La. R.S. 49:78(A) and (B).

Access Health moved for summary judgment seeking dismissal of ABC's cause of action for breach of contract on the ground that the agreement was an "absolute nullity and void *ab initio* due to [ABC's]

3

failure to register that contract with the State or ... to register as a lobbyist." Access Health requested the district court take judicial notice that ABC and Mr. Calvi were not registered as lobbyists via a "lobbying portal" located at HTTSP://ethics.la.gov/LobbyistData.[5] Access Health also argued it was entitled to summary judgment for unjust enrichment to recover the amounts paid to ABC pursuant to the null agreement.

[5] In its list of undisputed facts in support of the motion for summary judgment, Access Health, in a footnote, stated that "[a] search of the Lobbying Portal on March 25, 2022[,] returned no entries for [ABC] ... no entries for 'Charles Calvi,' 'Charles Calvi Jr.,' or 'Calvi.'"

ABC filed an opposition to the motion for summary judgment, disputing that the agreement was a contract for ABC to provide lobbying services on behalf of Access Health and that ABC and Mr. Calvi met the requirements of being executive branch lobbyists under Louisiana law. In addition to arguing that the agreement was not a lobbying contract and that it and Mr. Calvi were not lobbyists, ABC argued Access Health was not entitled to summary judgment as a matter of law because the district court lacked subject matter jurisdiction to declare the agreement void pursuant to La. R.S. 49:78.1.

A hearing was held on ABC's exceptions of lack of subject matter jurisdiction and prescription, and Access Health's motion for summary judgment. At the hearing, the district court overruled the exceptions and held it had subject matter jurisdiction to determine if ABC's and Mr. Calvi's failure to register as lobbyists and/or to register the agreement with the Board would void the agreement. The district court stated: "This Court is in the best position and has the legal authority to recognize and apply the state's public policy interest related to registration requirements associated with individuals who choose to lobby for contracts with the state." The district court also held it had subject matter jurisdiction "to apply the prescriptive or peremptive rules applicable in this case."

At the hearing, the district court granted, in part, Access Health's motion for summary judgment. In oral reasons, it held that the agreement was an absolute nullity and void for failure of ABC to register as a lobbyist and to register the contract for lobbying services. The district court opined that the record reflected that neither the agreement, ABC, nor Mr. Calvi were registered with the state. The district court concluded that as a result, ABC engaged in a misrepresentation sufficient to defeat and void the agreement [pursuant] to La. R.S. 49:78.1.

Thereafter, on May 20, 2022, the district court issued three judgments. The first judgment denied ABC's exceptions of lack of subject matter jurisdiction and prescription. The second judgment granted summary judgment in favor of Access Health, dismissing ABC's claim for breach of contract with prejudice, and expressly provided that the judgment was final for the purpose of an immediate appeal. The third judgment denied Access Health's motion for summary judgment on the unjust enrichment claim as premature.

ABC filed a motion for new trial on two of the judgments: the denial of ABC's exception of lack of subject matter jurisdiction and exception of prescription; and, the grant of Access Health's motion for summary judgment. ABC's motion for new trial was denied. ABC then filed a suspensive appeal as to these two judgments.

Prior to the district court issuing a judgment denying ABC's motion for new trial, Access Health was granted leave by the district court to amend the allegations of its reconventional demand a second time to add Mr. Calvi as a defendant-in-reconvention. Access Health averred that ABC acted as Mr. Calvi's alter ego; and, therefore, Mr. Calvi was personally liable for the return of the payments tendered to ABC under the agreement as to its claim for unjust enrichment. In response, ABC and Mr. Calvi filed a declinatory exception of lack of subject matter jurisdiction. On October 24, 2022, the district court issued a judgment overruling the exception. ABC sought supervisory review.

[This] court addressed the appeal and writ together. ABC appealed the district court's judgment granting Access Health's motion for summary judgment and dismissing ABC's cause of action for breach of the agreement based on a finding that the agreement was a nullity. ABC also challenged the district court's interlocutory judgments, which overruled the declinatory exceptions of lack of subject matter jurisdiction and prescription. **Advanced Benefit Concepts, Inc. v. Blue Cross & Blue Shield of Alabama**, 22-1193 (La. App. 1 Cir. 8/8/23), 375 So.3d 447 [(hereinafter referred to as "**ABC I**")].

[This court] sustained the exceptions of subject matter jurisdiction and reversed the granting of Access Health's motion for summary judgment that dismissed the suit. The court of appeal concluded that subject matter jurisdiction to declare null the fee agreement between lobbyist ABC and its principal, Access Health, lies exclusively with the Board. [**ABC I**], 375 So.3d at 455.

ABC applied for a writ of certiorari, and the supreme court granted the writ application "to address the narrow issue of whether the Board has 'exclusive' jurisdiction to determine whether the agreement is void under La. R.S. 49:78.1" or "whether the district court has original subject matter jurisdiction to determine this contractual dispute." **ABC II**, 392 So.3d at 316. On review, the supreme court reversed and remanded the matter to this court for consideration of the exception of prescription filed by ABC and the merits of the motion for summary judgment filed by Access Health. **Id.** at 320-21.

## LAW AND DISCUSSION

On remand, ABC argues that its exception of prescription should be sustained and Access Health's motion for summary judgment should be denied, relying, in part, on the provisions of the Executive Branch Lobbying Act ("the Act"), La. R.S. 49:71 *et seq.*[2] Pursuant to the Act, lobbyists are required to register with the Board of Ethics ("the Board") as soon as possible after employment as a lobbyist or after the first action requiring registration as a lobbyist. La. R.S. 49:74(A); **ABC II**, 392 So.3d at 317. The Board "shall be responsible for the enforcement of provisions of [the Act]." La. R.S. 49:78(A). Of particular importance is La. R.S. 49:78.1, which provides as follows:

A. No person shall enter into a contract to act in a representative capacity for the purpose of lobbying and fail to register or fail to file a supplemental registration providing the name and address of the person by whom he is employed or engaged and, if different, whose interests he represents pursuant to such contract as required by this Part.

B. Any person who violates the provisions of Subsection A of this Section shall have engaged in a misrepresentation sufficient to defeat or void the contract such person entered into to act in a representative capacity for the purpose of lobbying. Any effort to register or to file a supplemental registration after any remedy or relief relative to such a violation is sought pursuant to any provision of law shall not be sufficient to reverse the misrepresentation.

C. The [B]oard shall afford any person accused of violating Subsection A of this Section a hearing in accordance with the provisions of Part III of Chapter 15 of Title 42 of the Louisiana Revised Statutes of 1950. If the [B]oard finds that a person violated the provisions of Subsection A of this Section, the [B]oard shall order that the contract entered into for

---

[2] ABC argues that because "Access Health explicitly did *not* writ this [c]ourt's decision dismissing [Access Health's] reconventional demand for unjust enrichment," Access Health's unjust enrichment claim was dismissed and cannot be revived. (Emphasis in original.) However, a review of the record of this case establishes that Access Health's unjust enrichment claim has never been dismissed. The district court denied both ABC's exceptions asserting the objections of subject matter jurisdiction and prescription, leaving Access Health's claim viable. On review, this court reversed the district court's judgment overruling ABC's exception asserting the objection of subject matter jurisdiction and reversed the district court's dismissal of ABC's cause of action for breach of contract. See **ABC I**, 375 So.3d at 456. This court expressly pretermitted, *i.e.*, left undone, any discussion of ABC's exception asserting the objection of prescription in light of the finding that the district court lacked subject matter jurisdiction. **Id**. Thereafter, the supreme court reversed this court's decision in **ABC I** and remanded the case "for consideration of the exception of prescription filed by ABC and the merits of the motion for summary judgment filed by Access Health." **ABC II**, 392 So.3d at 320-21.

the purpose of lobbying by such person is void and the provisions thereof unenforceable.

D. The provisions of this Section shall be in addition to any other applicable penalties or any other remedy or relief provided by law.

**Prescription**

In response to ABC's petition, Access Health filed a reconventional demand and raised affirmative defenses, including that the agreement was an absolute nullity, void *ab initio*, and void pursuant to La. R.S. 49:78.1. Access Health maintained, in part, that because neither ABC nor Mr. Calvi were registered as lobbyists as required by La. R.S. 49:78.1(A), ABC and Mr. Calvi "engaged in misrepresentation sufficient to defeat or void the [agreement]...." La. R.S. 49:78.1(B).

In response to Access Health's reconventional demand, ABC filed exceptions, including the exception of prescription, noting that La. R.S. 49:78(B) provides that "[n]o action to enforce any provision of [the Act] shall be commenced after expiration of two years after the occurrence of the alleged violation." Because the agreement with OGB was awarded on May 9, 2019, ABC maintained that "any right created by La. R.S. 49:78.1—the statute under which [Access Health] claims the Fee Agreement between the parties was rendered void—was extinguished on May 9, 2021...." Access Health first alleged that the agreement was an absolute nullity and void *ab initio* on September 9, 2021, upon its filing of its affirmative defenses and reconventional demand; therefore, ABC argued that Access Health's claims were prescribed.

ABC's reliance on La. R.S. 49:78(B) is misplaced. As clearly stated in La. R.S. 49:78(A), the Board "shall be responsible for the enforcement of the provisions of [the Act]." As such, *the Board* cannot commence an action to enforce any provision of the Act after the expiration of two years after the occurrence of the alleged violation. Here, however, Access Health is not advancing an action to enforce the provisions of the Act. Rather, Access Health asserted affirmative

7

defenses and claims relying on the provisions of La. R.S. 49:78.1. Under La. R.S. 49:78.1(D), the Act allows for other "penalties or any other remedy or relief provided by law," including making affirmative defenses and reconventional demands. See **ABC II**, 392 So.3d at 320. As explained by the supreme court in **ABC II**, 392 So.3d at 319:

> In response to the *River Birch*[3] decision, the legislature promptly amended the Legislative Lobbying Act, La. R.S. 24:50 et seq., and the Executive Branch Lobbying Act, La. R.S. 49:71, et seq., to make it clear that a lobbyist who fails to register a contract for lobbying services "shall have engaged in a misrepresentation sufficient to defeat or void the contract." These statutes announce the strong public policy of Louisiana that lobbyists "shall" not be allowed to enforce unregistered contracts for lobbying services. Moreover, **the updated statutes explicitly protect relief and remedies beyond penalties imposed by the Board, allowing a lobbyist's principal to seek remedies provided by law where a lobbyist fails to properly register with the [s]tate**. La. R.S. 49:78.1(D).

(Emphasis added.) Through its affirmative defenses and reconventional demand, Access Health seeks "remedies provided by law where a lobbyist fails to properly register with the [s]tate," and such claims and defenses are not barred by the two-year limitation provided in La. R.S. 49:78(B).[4] **ABC II**, 392 So.3d at 319. Accordingly, we find the district court did not err in denying ABC's exception of prescription.

## Motion for Summary Judgment

Access Health sought summary judgment, seeking to dismiss ABC's cause of action for breach of contract on the ground that the agreement was absolutely null

---

[3] **River Birch, Inc. v. Robin & Assocs., Inc.**, 2004-1561, 2004-1562 (La. App. 1st Cir. 6/15/05), 906 So.2d 729, writ denied, 2005-2201 (La. 2/10/06), 924 So.2d 176.

[4] All personal actions, including an action on a contract, are subject to a liberative prescription of ten years, unless otherwise provided by legislation. La. Civ. Code art. 3499; **Smith v. Citadel Ins. Co.**, 2019-00052 (La. 10/22/19), 285 So.3d 1062, 1067 (citing La. Civ. Code art. 3499). An action for annulment of an absolutely null contract does not prescribe, whereas an action to annul a relatively null contract must be brought within five years from the time the ground for nullity either ceased (in the case of incapacity or duress) or was discovered (in the case of error or fraud). Moreover, nullity – whether relative or absolute – may be raised at any time as a defense against an action on the contract, even after the action for annulment has prescribed. La. Civ. Code art. 2032.

and void *ab initio* due to ABC's failure to register the agreement with the state or to register as a lobbyist.[5] The district court granted summary judgment, dismissing ABC's claims for breach of contract against Access Health in a judgment dated May 20, 2022.

A ruling on a motion for summary judgment is reviewed under a *de novo* standard, with the appellate court using the same criteria that govern the district court's determination of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. **Latour v. Brock**, 2023-00262 (La. 6/21/23), 362 So.3d 405, 407-08 (*per curiam*). A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(A)(3).

Access Health bore the burden of proof on the motion for summary judgment, both as the moving party seeking summary judgment and as the party asserting the affirmative defense that the agreement was absolutely null and void *ab initio*. See La. Code Civ. P. art. 966(D)(1); see also **Bailey v. Dep't of Culture Recreation & Tourism**, 2021-0227 (La. App. 1st Cir. 11/4/21), 332 So.3d 679, 685. According to Access Health, ABC entered into a contract for lobbying services and failed to register as lobbyists as required by La. R.S. 49:78.1(A). Due to ABC's failure to register, Access Health argued that the agreement was null and void.

In order to evaluate whether Access Health is entitled to judgment as a matter of law, two questions must be answered: (1) did ABC enter into a contract for lobbying services (the agreement) and fail to register as lobbyists as required by La.

---

[5] While Access Health also sought summary judgment on its claim for unjust enrichment to recover the amounts paid to ABC pursuant to the null agreement, the district court denied this portion of the motion for summary judgment as premature in a separate May 20, 2022 judgment.

9

R.S. 49:78.1(A); and (2) does a violation of La. R.S. 49:78.1(A) render the agreement absolutely null?

*(1) The Contract*

Pursuant to La. R.S. 49:78.1(A), "[n]o person shall enter into a contract to act in a representative capacity for the purpose of lobbying and fail to register...." Neither ABC nor Mr. Calvi registered as lobbyists,[6] and ABC did not dispute this fact. Here, ABC undeniably entered into a contract – the agreement[7] – with Access Health, to act in a representative capacity. The agreement stated, in pertinent part, as follows:

> Whereas ABC has and may continue to provide efforts and expend resources for the purpose of assisting [Access Health] in identifying and establishing business relationships with various [employer groups].
>
> Whereas [ABC and Access Health] wish to provide the terms by which ABC is to be compensated for its representation of [Access Health] and

---

[6] In its statement of uncontested material facts, Access Health stated that neither ABC nor Mr. Calvi were registered as lobbyists in the State of Louisiana and requested that the district court take judicial notice of their lack of registration via a "Lobbying Portal" located at HTTSP://ethics.la.gov/LobbyistData. The Lobbying Portal is part of the Louisiana Ethics Administration Program's website and allows users to search lobbying reports from March 7, 2009 to the present, and neither ABC nor Mr. Calvi were registered. This court may take judicial notice of governmental websites. **Labranche v. Landry**, 2022-0461 (La. App. 1st Cir. 12/15/22), 357 So.3d 395, 399 n.3 (citing **Mendoza v. Mendoza**, 2017-0070 (La. App. 4th Cir. 6/6/18), 249 So.3d 67, 71, writ denied, 2018-1138 (La. 8/31/18), 251 So.3d 1083). But see **Horrell v. Alltmont**, 2019-0945 (La. App. 1st Cir. 7/31/20), 309 So.3d 754, 761, in which the mover failed to attach any documentation in support of its motion for summary judgment on the issue of *res judicata*. The court determined that judicial notice could not be taken on the decisions of various courts, stating:

> Although a trial court can take judicial notice of a prior judgment, which was rendered in its own district, such notice is insufficient evidence for an appellate court to sustain a judgment dismissing a suit on the basis of res judicata. See **Union Planters Bank v. Commercial Capital Holding Corp.**, 2004-0871 (La. App. 1 Cir. 3/24/05), 907 So.2d 129, 130 (wherein this Court stated "[w]e note ... that there is no provision in the law for this court to take judicial notice of a suit record from another court ... [t]he record before this court contains no evidence showing that this matter has been adjudicated." It was incumbent on the party pleading the objection of res judicata to introduce the suit record into evidence at the trial court juncture of these proceedings.); see also **Bovie [v. St. John the Baptist Parish, Dept. of Streets and Roads**, 2013-162 (La. App. 5 Cir. 9/4/13), 125 So.3d 1158, 1161-62] (wherein the appellate court stated that "[a]lthough the trial court could take judicial notice of the prior judgment, which was rendered in its own district, such notice is insufficient evidence for this Court to affirm the sustaining of an exception of res judicata on appeal.")

**Horrell**, 309 So.3d at 761.

[7] Attached as an exhibit to Access Health's motion for summary judgment was ABC's petition, which included "Exhibit A" thereto, the agreement between ABC and Access Health.

10

efforts in assisting [Access Health] to enter into contracts with [employer groups].

...

**FEES.** ABC shall be entitled to a monthly fee ... for any and all [employer groups contracts] which ABC has participated in efforts to procure. Such efforts by ABC shall include, but not limited to, the referral or introduction of [Access Health] to [employer groups] or [employer groups ] to [Access Health], the initiation or negotiation of an [employer groups contract], the expenditure of any amount of time, money[,] or other resources, or any other work, which in any way leads to, assists in or precedes the execution of an [employer groups contract]. ... The [employer group contract] between [Access Health] and the Office of Group Benefits/State of Louisiana shall be $1.25 per employee covered under the [employer group contract], per month.

According to the allegations of the petition, ABC agreed to "represent Access Health and help Access Health identify, establish, and enter business relationships and contracts with various Employer Groups." ABC further alleged that it helped Access Health establish and enter into a business relationship and contract with the State of Louisiana, Office of Group Benefits ("OGB"),[8] through which Access Health agreed to provide the primary health care network and services to OGB plan participants for a monthly capitation payment as evidenced by a contract between Access Health and OGB executed on May 9, 2019, *i.e.*, the OGB contract, which was attached to ABC's petition as "Exhibit D." As stated in its petition, ABC "attended all [OGB's] meetings and continued to service the [OGB]/Access Health account and foster the [OGB]/Access Health relationship to this day."

Louisiana Revised Statutes 49:72(6) defines lobbying as any direct act or communication with an executive branch official, the purpose of which is to aid in influencing an executive branch action. "Executive branch official" is defined as "an elected official, an appointed official, or an employee in an executive branch agency." La. R.S. 49:72(4). Pursuant to La. R.S. 42:801(A), OGB is "created within

---

[8] ABC acknowledged that "[a]lthough the [agreement] was intended by the parties to apply to any employee group contract that [ABC] helped Access Health to procure, it explicitly referred to one such employee group contract: the agreement between Access Health and the State of Louisiana, Office of Group Benefits."

11

the office of the governor, division of administration" and is therefore within the executive branch. See also La. Const. art. IV, § 1(A) ("The executive branch shall consist of the governor ... and all other executive offices, agencies, and instrumentalities of the state."). Here, the terms of the agreement buttressed by the allegations in ABC's petition establish that ABC's contracted purpose was "to aid in influencing an executive branch action" and necessarily involved "communication with an executive branch official." La. R.S. 49:72(4) and (6). Therefore, we find that ABC entered into a contract for lobbying services and failed to register as required by the Act in violation of La. R.S. 49:78.1(A).[9]

*(2) Nullity*

In **ABC II**, 392 So.3d at 320-21, the supreme court instructed this court to consider whether a contract in violation of the Act can be declared an absolute nullity under La. Civ. Code art. 2030, which provides:

> A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed.

> Absolute nullity may be invoked by any person or may be declared by the court on its own initiative.

The supreme court acknowledged that La. Civ. Code art. 2030 contemplates that another law may be used to determine whether a rule of public order is violated or whether the object of a contract is illicit, *i.e.*, unlawful, or immoral.[10] **ABC II**, 392 So.3d at 320. Further, the supreme court expressly stated:

> When a contract produces a result prohibited by law, Article 2030 allows for a court, even on its own motion, to declare it absolutely null.

---

[9] When a violation of La. R.S. 49:78.1(A) is found, the Board shall order a contract void and the provisions unenforceable pursuant to La. R.S. 49:78.1(C). However, the Board also has the authority to impose or collect penalties and may censure or prohibit a person from lobbying for a period of time pursuant to La. R.S. 49:78(C). However, as stated by the supreme court in **ABC II**, 392 So.3d at 319, La. R.S. 49:78.1(D) additionally allows "any other remedy available 'by law,'" which is not restricted to remedies provided in Section 78.1 of the Act.

[10] In contrast, a contract is relatively null when it violates a rule intended for the protection of private parties. See La. Civ. Code art. 2031.

If not for this provision, a court could be required to enforce contracts made in violation of the law or against public policy.

**ABC II**, 392 So.3d at 320. See also La. Civ. Code art. 7 ("Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity.").

We note that the purpose of the Act is set forth in La. R.S. 49:71, which provides as follows:

> The legislature declares that the operation of open and responsible government requires that the fullest opportunity be afforded to the people to petition their government for the redress of grievances and to express freely their opinions on actions of the executive branch. **To preserve and maintain the integrity of executive branch action and state government, the legislature also declares it is necessary that the identity of persons who attempt to influence actions of the executive branch and certain expenditures by those persons be publicly disclosed.**

(Emphasis added.)

Additionally, in finding that the district court was not deprived of subject matter jurisdiction in this case, the supreme court concluded that:

> With the enactment of La. R.S. 49:78.1 following the *River Birch* decision, **the legislature has clearly established the public policy that contracts for services of lobbyists who are not registered with the [s]tate are not to be enforced and that other penalties, remedies, or relief may [be] sought in relation to the illegal contract.** *River Birch, Inc. v. Robin & Assocs.*, 04-1561 (La. App. 1 Cir. 6/15/05), 906 So.2d 729, 734-35, *writ denied*, 05-2201 (La. 2/10/06), 924 So.2d 176. In *River Birch*, a lobbyist brought a cause of action for breach of a contract for lobbying services against its principal. 906 So.2d at 730-31. The principal argued that the contract was unenforceable as an absolute nullity because, among other reasons, the lobbyist failed to register its relationship with its principal with the state as required by Louisiana law. *Id.* at 731. Although the First Circuit agreed that the lobbyist broke the law by failing to register with the state, the court held that the statutory violation in that case did not invalidate the contract because the then-governing Lobbying Act neither "address[ed] nor govern[ed] contracts negotiated between lobbyists and clients" and contained its own penalty provisions "consisting primarily of relatively nominal monetary fines," which were to be imposed by the Board. *Id.* at 734.
>
> In response to the *River Birch* decision, the legislature promptly amended the Legislative Lobbying Act, La. R.S. 24:50 et seq., and the Executive Branch Lobbying Act, La. R.S. 49:71, et seq., to make it clear that a lobbyist who fails to register a contract for lobbying services

"shall have engaged in a misrepresentation sufficient to defeat or void the contract." **These statutes announce the strong public policy of Louisiana that lobbyists "shall" not be allowed to enforce unregistered contracts for lobbying services.** Moreover, the updated statutes explicitly protect relief and remedies beyond penalties imposed by the Board, allowing a lobbyist's principal to seek remedies provided by law where a lobbyist fails to properly register with the [s]tate. La. R.S. 49:78.1(D).

**ABC II**, 392 So.3d at 318-19. (Emphasis added.)

Accordingly, we find that La. R.S. 49:78.1(A), which requires that persons entering into a contract to act in a representative capacity for the purpose of lobbying register, is for the protection of the public interest and in furtherance of public order. See La. Civ. Code arts. 7 and 2030. Therefore, a contract in which a person[11] obliges himself to act in a representative capacity for the purpose of lobbying and who fails to register or file a supplemental registration with the Board pursuant to La. R.S. 49:74 is unlawful, as it "produces a result prohibited by law," and is absolutely null. La. Civ. Code art. 2030; La. R.S. 49:78.1(A); **ABC II**, 392 So.3d at 320. See also **Robinson v. Papania**, 2022-1010 (La. App. 1st Cir. 3/6/23), 368 So.3d 74, 77-79, writ denied, 2023-00488 (La. 5/23/23), 360 So.3d 1262 (concluding that the laws requiring contractors to be licensed and prohibiting unlicensed contractors to enter into construction contracts "embody rules of public order," thereby finding a contract with an unlicensed contractor to be an absolute nullity).

Pursuant to La Civ. Code art. 2023, "[a]n absolutely null contract, or a relatively null contract that has been declared null by the court, is deemed never to have existed." An absolutely null contract is unenforceable, and a party to such cannot assert a cause of action for breach of the absolutely null contract. **Robinson**, 368 So.3d at 78. Therefore, Access Health is entitled to judgment as a matter of law, and the district court did not err in granting summary judgment in favor of Access

---

[11] "Person" is defined in the Act as "an individual, partnership, committee, association, corporation, and any other organization or group of persons." La. R.S. 49:72(8).

14

Health and against ABC, dismissing ABC's claim for breach of contract against Access Health with prejudice.

## CONCLUSION

For the above and forgoing reasons, we affirm the district court's May 20, 2022 judgment denying Advanced Benefit Concepts, Inc.'s exception raising the objection of prescription. We also affirm the district court's May 20, 2022 judgment granting summary judgment in favor of Access Health, Inc., Preferred Care Services, Inc., and Blue Cross and Blue Shield of Alabama and against Advanced Benefit Concepts, Inc., dismissing Advanced Benefit Concepts, Inc.'s cause of action for breach of contract asserted against Access Health, Inc., Preferred Care Services, Inc., and Blue Cross and Blue Shield of Alabama with prejudice. Costs of this appeal are assessed to Advanced Benefit Concepts, Inc.

**AFFIRMED.**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

**2022 CA 1193 R**

ADVANCED BENEFIT CONCEPTS, INC.

VERSUS

BLUE CROSS AND BLUE SHIELD OF ALABAMA, ACCESS HEALTH, INC. AND
PREFERRED CARE SERVICES, INC.

---

**EDWARDS, J.,** *concurring in part and dissenting in part.*

I concur with the portion of the majority's holding that affirms the May 20,
2022 judgment overruling the exception raising the objection of prescription filed
by ABC. ABC's exception was filed in response to Access Health's First
Supplemental and Amended Answer and Reconventional Demand, which was filed
on February 4, 2022. After the district court signed a judgment overruling the
exception, Access Health was granted leave to file a Second Supplemental and
Amended Answer and Reconventional Demand on June 30, 2022. The only
exception ABC filed in response to the Second Supplemental and Amended Answer
and Reconventional Demand was an exception raising the objection of lack of
subject matter jurisdiction.

This court has consistently found that exceptions directed to a previously filed
petition are rendered moot by the filing of an amended petition. See, e.g., **Barker
v. Merrick,** 2019-1124 (La. App. 1 Cir. 12/23/19), 2019 WL 7166787; **Lentini v.
Louisiana Office of Student Financial Assistance,** 2022-1116 (La. App. 1 Cir.
12/22/22), 2022 WL 17959879; **Aydell v. Parish of East Baton Rouge,** 2023-0396
(La. App. 1 Cir. 6/20/23), 2023 WL 4074018; **In re Succession of Wheeler,** 2024-
0430 (La. App. 1 Cir. 8/12/24), 2024 WL 3755553; **Louisiana Services Network
Data Consoritum v. Waguespack,** 2024-1248 (La. App. 1 Cir. 1/13/25), 2024 WL

1

5319922. Other appellate courts have come to the same conclusion. <u>See, e.g.,</u> **Smith v. Cannon**, 43,964 (La. App. 2 Cir. 1/28/09), 2 So.3d 1227, 1230, <u>writ denied</u>, 2009-0668 (La. 6/19/09), 10 So.3d 734. In applying this same concept to Access Health's reconventional demand, I find the exception raising the objection of prescription filed by ABC to Access Health's First Supplemental and Amended Answer and Reconventional Demand is moot.

As to the motion for summary judgment filed by Access Health, I respectfully dissent. In order for Access Health to carry its burden on summary judgment, it was required to establish the essential material facts necessary to meet its initial burden that there are no genuine issues of material fact as to their affirmative defense. <u>See</u> La. C.C.P. art. 966(A)(3) & (D)(1). One such material fact is whether ABC and Calvi failed to register as lobbyists.

In its statement of uncontested material facts, Access Health stated that neither ABC nor Calvi was registered as a lobbyist in the State of Louisiana. As support for this statement, Access Health directed the district court to an online "Lobbying Portal" maintained by the Board whereby members of the public may search for lobbyists who are currently registered or previously were registered in the State of Louisiana. According to Access Health, it conducted a search of the Lobbying Portal on March 24, 2022, and no results were found for ABC or Calvi. Access Health did not attach any documentary evidence to its motion for summary judgment that would prove this fact, but at the hearing on Access Health's motion for summary judgment, counsel for Access Health specifically requested the district court take judicial notice of the Lobbying Portal and ABC's and Calvi's lack of registration.

As noted by the majority, courts may generally take judicial notice of governmental websites. <u>See</u> **Labranche v. Landry**, 2022-0461 (La. App. 1 Cir. 12/15/22), 357 So.3d 395, 399 n.3 (citing **Mendoza v. Mendoza**, 2017-0070 (La. App. 4 Cir. 6/6/18), 249 So.3d 67, 71, <u>writ denied</u>, 2018-1138 (La. 8/31/18), 251

2

So.3d 1083). However, on summary judgment, the district court (and this court on *de novo* review) may only consider evidence that is admissible under the express provisions of La. C.C.P. arts. 966 & 967, and there is no provision in either that allows a party to support or oppose factual issues without proper documentation. See **Horrell v. Alltmont**, 2019-0945 (La. App. 1 Cir. 7/31/20), 309 So.3d 754, 761. In **Horrell**, the mover sought summary judgment on the basis of *res judicata* yet failed to attach any documentary evidence to his motion. Rather, the mover requested that the district court take judicial notice of decisions "of the 22nd JDC, the First Circuit[,] and the Supreme Court." **Horrell**, 309 So.3d at 760. This court determined that request did not satisfy the requirements of La. C.C.P. art. 966(A)(4) or (D)(2). It explained, "[I]n a summary proceeding, the other judgments and suit record documents must be filed in support of or in opposition to the motion in order to allow the trial court to make a factual finding as to whether the present suit is barred by the application of res judicata[.]" **Horrell**, 309 So.3d at 761. Therefore, the **Horrell** court found the district court "was in error in considering or taking judicial notice of the decisions of various courts and not requiring the defendants to attach or provide the necessary documents in order to properly grant the defendants' motion for summary judgment." **Horrell**, 309 So.3d at 761.

The **Horrell** court further noted that Louisiana District Court Rule 9.10(a) provides that a memorandum in support of summary judgment shall contain "[a] reference to the document proving each [material fact that the mover contends is not genuinely disputed], with the pertinent part containing proof of the fact designated." **Horrell**, 309 So.3d at 761-62. In this case, Access Health asserted that it is an undisputed fact that ABC and Calvi are not and were not registered lobbyists, but it failed to file any documentary evidence with its memorandum in support of its motion for summary judgment that would establish this fact nor did its memorandum comply with the requirements of District Court Rule 9.10(a) as was necessary for it

3

to be entitled to summary judgment. <u>See</u> **Horrell**, 309 So.3d at 761 (citing La. C.C.P. art. 966(A)(4)); <u>see also</u> **Mercadel v. State Through Department of Public Safety & Corrections**, 2018-0415 (La. App. 1 Cir. 5/15/19), 2019 WL 2234404, *3-4 (unpublished) (explaining that documentary support for an alleged undisputed material fact is "necessary" for the mover to be entitled to summary judgment).

The district court in this case did not state on the record or in writing whether it took judicial notice or otherwise considered the search results of the Lobbying Portal. However, on my *de novo* review, I find Access Health failed to submit any documentary evidence in support of its motion for summary judgment to establish that ABC and Calvi failed to register as lobbyists in derogation of Louisiana law. Therefore, I find Access Health failed to carry its burden on summary judgment, and I would reverse the district court's May 20, 2022 judgment granting summary judgment in favor of Access Health, Inc., Preferred Care Services, Inc., and Blue Cross and Blue Shield of Alabama and dismissing ABC's claims against them.